AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Black Samsung tablet with cracked screen, Model SM-T560NU, SErial Number R52I40F7TRF

Case No. MR 21-1492

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Black Samsung tablet with cracked screen, Model SM-T560NU, SErial Number R52I40F7TRF

located in the _____ District of ____New Mexico____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B of Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1038 | False Information and Hoaxes |

The application is based on these facts:
See Attached Affidavit hereby incorporated by reference as if fully restated herein.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Alyson Berry, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10-19-2021

*Judge's signature*

B. Paul Briones, US Magistrate Judge
*Printed name and title*

City and state: Farmington, NM

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Alyson M. Berry, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), where I have been employed in that capacity since July 2019. I am currently assigned to the Albuquerque Division of the FBI, Farmington Resident Agency, and have primary investigative responsibility for crimes that occur in and around Indian Country, including fraud and violent crimes such as homicide, robbery, arson, aggravated assault, and sexual assault.

2. The information set forth in this affidavit has been derived from an investigation conducted by the Farmington Resident Agency of the FBI and San Juan County Sheriff's Office (SJCSO).

3. I make this affidavit in support of an application for a search warrant on the following devices collected during the execution of search warrant Case No. 21-MR-1255 at 324 W. Blanco Boulevard, Space 15, Bloomfield, New Mexico on September 3, 2021:

   a. Black Nokia cell phone with Verizon logo with charger

   b. Black LG cell phone

   c. Navy colored onn. tablet, Serial Number 18862009037600

   d. Navy colored onn. tablet with skull sticker, Serial Number 18852010043951

   e. Black Samsung tablet with cracked screen, Model SM-T560NU, Serial Number R52I40F7TRF

   f. Black Kyocera cell phone, Model C5215

   g. Black Samsung flip phone with Verizon logo with charger, Model SM-B311V

   h. Navy colored onn. tablet, Serial Number 18862009033193

  **i.** Black Samsung tablet with "PUBG" sticker with charger, Serial Number R52IAOEPOCA

  **j.** Navy colored small onn. tablet with cracked screen, Serial Number 18862009037514

  **k.** Navy colored small onn. tablet, Serial Number 520619298039119

Based on the facts set forth in this affidavit, there is probable cause to believe there were violations of 18 U.S.C. § 1038 False Information and Hoaxes committed by KEVIN DUANE TULLEY, year of birth 1986 (referred to herein as "KEVIN"), and that evidence of such crimes may be contained in the Target Devices.

  4. This affidavit is intended to show there is probable cause for the requested search warrant and does not set forth all my knowledge about this matter. The statements in this affidavit are based on my personal knowledge, information that I have received from other law enforcement personnel, and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence of the listed offense is located in the Target Devices.

## PROBABLE CAUSE

  5. From February 2, 2017 to January 4, 2020, KEVIN called the San Juan County Communications Authority (Dispatch) to give false reports of various incidents. At least 21 calls were documented. KEVIN reported incidents of domestic violence, theft, a plane crash, abduction, battery and assault, car collisions, and active shooter incidents, among others. After responding to the calls, law enforcement determined they were all false.

  6. In addition to San Juan County Sheriff's Office units, Bloomfield Police Department, Farmington Police Department, New Mexico State Police, Bureau of Land Management Officers, San Juan Regional Air Care, local fire and rescue units, Emergency Medical Services, and Navajo Police

Department also responded to these calls. Detective Jacob Courtney, San Juan County Sheriff's Office, calculated thousands of dollars lost on manpower, equipment, helicopters, and other assets utilized in responding to KEVIN's false emergencies.

7. Linda Carey, Operator for San Juan County Communications Authority, and Detective Courtney identified KEVIN as the caller. Recognizing his voice characteristics and common phrases within the dispatch calls, Detective Courtney and Operator Carey realized KEVIN called from multiple numbers. His voice consistently remained the same and every call began with the phrase "yes, hello."

8. KEVIN called dispatch several times using the phone number (505)419-9666, which matches his number as listed in the San Juan County Sheriff's Office system. On other occasions, KEVIN called from random numbers not associated with his identity.

9. Based on my experience, callers can easily obtain apps that allow the callback number on a call to be modified, otherwise known as "number-spoofing". Therefore, KEVIN was able to mask his own telephone number and make calls from various numbers on his own devices. These devices include mobile telephones, computers, and tablets. Because telephone bills and app-subscription bills are often received electronically via email, evidence of these documents may be located on computers or tablets within the Target Devices.

10. An inquiry of City of Farmington utility services by Detective Courtney showed active service at the Target Location of 324 W. Blanco Blvd., Space 15, Bloomfield, New Mexico under the name of KEVIN DUANE TULLEY. Additionally, Detective Courtney observed a GMC truck registered to KEVIN in the driveway numerous times, most recently on August 23, 2021. On August 27, 2021, your affiant observed KEVIN's GMC truck in his driveway at approximately 1:30 p.m., and reflective number 15 on the residence. On September 3, 2021, KEVIN was present at his residence when law enforcement

began the search warrant execution. All Target Devices are presumably owned by KEVIN, as the only adult occupying the residence.

11. Based on the information provided in this affidavit, your affiant believes that evidence items in the form of forensic evidence are located in Target Devices described in paragraph 3.

12. The search warrant is for the purpose of searching the Target Devices for digital evidence described in paragraph attachment B.

## **TECHNICAL TERMS**

13. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera/video recorder: A digital camera/video recorder is a camera that records pictures as digital picture files and has the capability of video recording events. Digital cameras/video recorders use a variety of fixed and removable storage media to store their recorded images and video files. Images and video files can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras/ video recorders also include a screen for viewing the stored images and videos. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player") is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or

miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14. Based on my training, experience, and research, and from consulting product technical specifications available on the internet, I know that the Target Devices have capabilities that allow them to serve as a wireless telephone, digital camera/audio video recorder, portable media player, PDA, and internet access device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and/or direct evidence of crimes committed.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Devices consistent with the warrant. The examination of the Target Devices may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Target Devices to human inspection in order to determine whether it is evidence described by the warrant.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 1038 False Information and Hoaxes and Federal Rule of Criminal Procedure 41.

19. Based on the facts set forth in this affidavit, there is probable cause to believe there were violations of 18 U.S.C. § 1038 False Information and Hoaxes, and that evidence of such crimes may be contained in the Target Devices.

20. Assistant United States Attorney Paul Mysliwiec, District of New Mexico, reviewed and approved the affidavit requesting approval to search the Target Location.

21. I swear that this information is true and correct to the best of my knowledge and belief.

Alyson M. Berry, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me on October 19, 2021.

The Honorable B. Paul Briones
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

The following devices were collected during the execution of search warrant Case No. 21-MR-1255 at 324 W. Blanco Boulevard, Space 15, Bloomfield, New Mexico on September 3, 2021:

    a. Black Nokia cell phone with Verizon logo with charger

    b. Black LG cell phone

    c. Navy colored onn. tablet, Serial Number 18862009037600

    d. Navy colored onn. tablet with skull sticker, Serial Number 18852010043951

    e. Black Samsung tablet with cracked screen, Model SM-T560NU, Serial Number R52I40F7TRF

    f. Black Kyocera cell phone, Model C5215

    g. Black Samsung flip phone with Verizon logo with charger, Model SM-B311V

    h. Navy colored onn. tablet, Serial Number 18862009033193

    i. Black Samsung tablet with "PUBG" sticker with charger, Serial Number R52IAOEPOCA

    j. Navy colored small onn. tablet with cracked screen, Serial Number 18862009037514

    k. Navy colored small onn. tablet, Serial Number 520619298039119

This warrant authorizes the seizure and forensic examination of the Target Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.  All electronically stored information, data and records on the Target Device described in Attachment A that relate to violations of 18 U.S.C. § 1038 False Information and Hoaxes and limited to:

    i. Incoming/Outgoing telephone calls, Voicemail communications, Incoming/Outgoing text messages, Incoming/Outgoing email communications, contacts, digital photographs, video, memos, notes, documents, files, maps, GPS data and locations, calendars, appointments, internet activity, app usage, etc.

2.  Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.